# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JIMMY A. BOYD (K68647),** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **12 C 2965** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| **CAMERON WATSON, Warden,** | ) | |
| **Western Illinois Correctional Center,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In October 2003, Petitioner Jimmy A. Boyd was convicted of aggravated battery, aggravated battery with a firearm, and four counts of home invasion in the Circuit Court of DuPage County. He is currently serving a thirty-three year sentence. Before the Court are Boyd's *pro se* habeas corpus petition under 28 U.S.C. § 2254 [79] and his motion for discovery [77]. For the reasons provided herein, the Court denies the petition and denies Boyd's request for discovery.

## <u>Factual Background</u>[1]

On January 9, 2003, Boyd and two men named Ogle and Dave helped move furniture into Ernesto Quiles and Martha Zinda's apartment. *Boyd*, 845 N.E.2d at 924–25. Boyd and Quiles had known each other for about a year. *Id*. at 925. That day, Boyd saw Quiles retrieve money from a safe in his bedroom and repay Dave $500 for a loan. *Id.*

Three days later, Boyd and an unidentified male partner broke into Quiles and Zinda's apartment looking for money. *Id.* At the time of the break-in, Quiles was asleep in the bedroom

---

[1] The factual background is based upon the opinions issued by the state appellate court on direct and post-conviction review. *See Illinois v. Boyd*, 845 N.E.2d 921 (Ill. App. Ct. 2006) (direct appeal); *Illinois v. Boyd*, No. 2-10-067, 2011 WL 10453943 (Ill. App. Ct. June 10, 2011) (post-conviction review). The state appellate court was the final court to adjudicate Petitioner's claims.

and Zinda was sitting in the living room. *Id*. at 925–26. Zinda heard the living room window shatter and saw Boyd jump into the apartment. *Id*. She recognized Boyd and later testified that Boyd had been wearing a dark blue jacket with a loose hood covering his head. *Id*.

Upon entering the apartment, Boyd seized Zinda by the hair and neck and dragged her into the hallway. *Id*. While holding a gun to her head, he asked, "Where's your boyfriend?" *Id*. Awoken by the commotion, Quiles came into the hallway and saw Boyd holding the gun to Zinda's head. *Id*. at 925. According to Quiles, Boyd was wearing dark pants and a hooded sweatshirt. *Id*. The hood covered Boyd's eyebrows, but Quiles could see the rest of Boyd's face. *Id*. Quiles would later testify that he recognized Boyd's face as well as his voice. *Id.*

Still standing in the hallway, Boyd instructed his partner to enter the bedroom and turn on a light on the bedroom dresser. *Id*. His partner followed these instructions but could not find any money in the bedroom. *Id.* Growing frustrated, Boyd ordered Quiles and Zinda to lie on the floor and demanded the location of the safe. *Id*. When Quiles insisted that they did not have a safe, Boyd hit Quiles and Zinda with the gun, reiterated his demand, and threatened to rape Zinda if Quiles did not provide the safe's location. *Id*. At this point, Quiles grabbed Boyd's arm and "got a very good look" at his face. *Id.* Boyd hit Quiles again and then shot him twice before fleeing the apartment with his partner. *Id.* at 925–26.

Once the intruders were gone, Zinda called 911. Before the paramedics and police arrived, however, Quiles directed Zinda "to tell the police that Ogle's boys did it." *Id*. Boyd and Ogle were members of the Simon City Royals street gang, and Quiles and Zinda were afraid of directly identifying Boyd, fearing retaliation. *Id*. at 926–27.

Later that day, police officers questioned Quiles and Zinda at their apartment. *Id*. at 927. Zinda told the officers that she had never seen the intruders before. She described them as white

2

or Hispanic men in their twenties who were "possible gang bangers," but she said she could not provide a better description because she had been looking at the floor the whole time. *Id*. Quiles likewise told police that he could not identify the intruders. *Id*. Upon searching the apartment, police found $10,000 in the safe, $2,500 in a shoe, and $700 in a kitchen drawer, as well as miscellaneous drug paraphernalia. *Id*.

For several days after the break-in, Quiles was hospitalized for treatment of his gunshot wounds. *Id*. at 926. He remained fearful of retaliation from the Simon City Royals gang, particularly after Ogle visited him in the hospital. *Id*. Quiles believed that if he identified Boyd as the perpetrator while he was still in the hospital, he would be unable to protect himself and his family from the gang. *Id*.

While Quiles was in the hospital, officers showed him a photographic lineup that included Boyd's photo. *Id*. Quiles identified Boyd and told the police that Boyd "might have been involved," although privately Quiles was "100% certain" that Boyd had been one of the intruders. *Id*. Quiles also assisted in the creation of a police sketch of the intruder, but he was not "up front" about the fact that he knew Boyd was the attacker. *Id*. When police showed Zinda the photograph lineup with Boyd's picture, she told them that one of the attackers appeared to be a friend of Ogle's who had previously helped move their furniture. *Id*. at 926–27.

Meanwhile, Boyd also spoke to the police during the investigation. *Id*. at 927. He told an officer that he knew Quiles had been shot and that they had partied together at Ogle's home in the past. *Id*. Boyd said that Quiles bragged about his possessions and flaunted his wealth. *Id*. The officer who spoke to Boyd stated that Boyd appeared jealous of Quiles. *Id*.

After he was released from the hospital, Quiles moved his family and changed his telephone number. *Id*. at 926. Only then did he contact the police to identify Boyd as the

attacker. *Id*. At that time, Quiles explained that he had previously feared for his family's safety, and that he believed the morphine given to him at the hospital had adversely impacted his memory. *Id*. Zinda also told the police that the trauma from the event had delayed her identification of Boyd. *Id*. Boyd was subsequently arrested. *Id*.

In the meantime, police informed Quiles that he had been caught on tape dealing cocaine. *Id*. at 926. Quiles admitted that he had sold one ounce of cocaine per week for the previous year. *Id.* Cocaine was also detected in his urine during his hospital stay. *Id.* Quiles agreed to serve as an informant in future drug investigations. *Id.* He later insisted that his testimony at Boyd's trial was not influenced by threats or promises of leniency in connection with his drug activities. *Id*.

## **Procedural Background**

At the conclusion of Boyd's trial, the jury convicted him of one count of aggravated battery, one count of aggravated battery with a firearm, and four counts of home invasion. *Id.* at 924. The trial court sentenced Boyd to concurrent terms of imprisonment of fifty-five and forty-five years for the two counts of home invasion and merged the remaining convictions into those two counts. *Id.* at 927.

On direct appeal, the Illinois Appellate Court reversed Boyd's convictions for the home invasion counts on speedy-trial grounds and affirmed the judgment in all other respects. *Id.* at 1044. The appellate court remanded the case for resentencing on one count of aggravated battery as to Zinda and one count of aggravated battery with a firearm as to Quiles. *Id.* Boyd did not file a petition for leave to appeal to the Illinois Supreme Court regarding the portion of the judgment that was affirmed.

On remand, the trial court sentenced Boyd to consecutive terms of eight years for aggravated battery and twenty-five years for aggravated battery with a firearm. Resp't Ex. A, Judgment. Boyd appealed the new judgment, arguing that the imposition of consecutive sentences was improper. Resp't Ex. L, Br. & Argument. The Illinois Appellate Court disagreed, holding that the imposition of consecutive sentences was mandatory under Illinois law. Resp't Ex. O, Rule 23 Order, *People v. Boyd*, No. 2-7-0792 (Ill. App. Ct. May 21, 2009). Boyd petitioned for leave to appeal to the Illinois Supreme Court raising the same issues presented during his second direct appeal, but the petition was denied. Resp't Ex. P, PLA, *People v. Boyd*, No. 108773; Resp't Ex. Q, *People v. Boyd*, 919 N.E.2d 356 (Ill. 2009).

Boyd then filed a petition for post-conviction relief in the state trial court, arguing that his trial counsel had provided ineffective assistance by failing to file an answer to discovery; appear on certain court dates; present evidence that Boyd waited in a car while two men named Sam Reeves and "Shawn LNU" committed the crimes; introduce evidence of a police sketch resembling Reeves; move for a continuance when the State belatedly disclosed that Quiles was an informant; investigate Quiles's criminal activity; object to a jury instruction on eyewitness testimony; and keep out evidence of Boyd's gang affiliation. Resp't Ex. R, Post-conviction Petition, *People v. Boyd*, No. 03 CF 890. In addition, Boyd contended that his appellate counsel had provided ineffective assistance by failing to challenge the State's belated disclosure of Quiles's status as an informant; argue on appeal that trial counsel was ineffective for not objecting to the instruction on eyewitness testimony; and appeal the admission of the gang-related evidence. *Id.* The trial court dismissed Boyd's post-conviction petition, and the Illinois Appellate Court affirmed. Resp't Ex. W, Rule 23 Order, *People v. Boyd*, No. 2-10-0697 (Ill. App. Ct. June 10, 2011).

Boyd then filed a petition for leave to appeal to the Illinois Supreme Court, arguing that his trial counsel was ineffective because he had allowed alcoholism to interfere with his representation; objected to admission of the police sketch; failed to investigate Quiles's role as an informant; failed to adequately cross-examine Quiles for bias; failed to object to the jury instruction on eyewitness testimony; and opened the door to evidence of Boyd's gang affiliation. Resp't Ex. X, PLA, *People v. Boyd*, No. 112689, at 5–6. The petition also included a page from the appellate court's order stating: "[t]he post-conviction petition . . . alleges that appellate counsel was ineffective for failing to raise the issues regarding the jury instruction, the tardy disclosure of Quiles's drug dealing, and the evidence of gang membership." *Id.* at 8. The Illinois Supreme Court denied the petition. Resp't Ex. Y, *People v. Boyd*, 955 N.E.2d 473 (Ill. 2011).

In April 2012, Boyd filed his habeas petition before this Court. In that petition, Boyd advanced four claims: (1) there was insufficient evidence to support his conviction; (2) the trial court erred in instructing the jury on eyewitness identification; (3) his trial counsel was ineffective because he failed to object to the jury instruction on eyewitness identification, failed to present evidence of Boyd's innocence, opened the door to evidence of Boyd's gang affiliation, and failed to investigate Quiles's drug activities; and (4) his appellate counsel was ineffective because he failed to raise on appeal trial counsel's ineffective representation as to the jury instruction, gang-affiliation evidence, and the lack of investigation into Quiles's drug activities. The case was stayed while Boyd pursued a motion for forensic testing and a motion for leave to file a successive post-conviction petition in state court. The trial court allowed further forensic testing but denied leave to file the successive petition. On appeal, the Illinois Appellate Court affirmed the denial. When the state-court proceedings concluded, this Court lifted the stay, and Boyd filed an amended

petition. Boyd's amended petition added a new claim: (5) that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose a 2003 DNA report.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus may issue only if the petitioner demonstrates that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). The availability of habeas relief serves as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted). A federal court may grant habeas relief only if it determines that the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that the state court's decision was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

For purposes of applying the standard, the Supreme Court has defined "clearly established federal law" as the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The state court need not cite, or even be aware of, controlling Supreme Court decisions, as long as the state court does not contradict precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). Furthermore, federal courts must presume that state courts know and follow federal law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). This presumption is especially strong when a state court considers well-established legal principles that have been routinely applied in criminal cases for many years. *Burt v. Titlow*, 571 U.S. 12, 19 (2013).

A state court's decision is "contrary to" clearly established federal law under § 2254(d) if the state court applied a rule different from the governing law under the Supreme Court's precedents, or if it decided a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Premo v. Moore*, 562 U.S. 115, 128 (2011). In turn, a state court's decision involves an "unreasonable application" of clearly established federal law under § 2254(d) if the state court identified the correct legal principle from Supreme Court precedent but unreasonably applied that principle to the facts of the petitioner's case. *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). These deferential standards are "intentionally difficult to meet," *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted), and habeas relief is available only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington*, 562 U.S. at 102.

In analyzing the state court decision, a federal court must review the decision of the last state court to rule on the merits of the habeas petitioner's claims. *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir. 2013). The state court's factual determinations are presumed correct, and the petitioner bears the burden of overcoming this presumption by clear and convincing evidence. *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)). In addition, the analysis is "backward looking," meaning that the federal court is limited to reviewing the record before the state court at the time the state court made its decision. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). The court is also limited to considering Supreme Court precedent as of the time the state court rendered its decision. *Greene v. Fisher*, 565 U.S. 34, 38 (2011).

Before considering the merits of a habeas petition, however, a federal court must ensure that the petitioner has exhausted all available remedies in state court and has avoided procedural default. 28 U.S.C. § 2254(b)(1)(A); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir.

1996).  A claim is procedurally defaulted if the petitioner failed to fairly present it at each level of state court review, including in a petition for leave to appeal before the state supreme court. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–46 (1999)).  If a claim is procedurally defaulted, a petitioner is not entitled to habeas relief unless he can establish that cause exists for the default and actual prejudice was suffered, or that a fundamental miscarriage of justice resulted in a conviction despite the petitioner's actual innocence.  *Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## Discussion

## I.     Claim One: Sufficiency of the Evidence to Support the Conviction

Claim One of Boyd's habeas petition argues that there was insufficient evidence to support his conviction.  Respondent contends that this claim fails on the merits, because the state appellate court reasonably denied the claim.[2]  The Court agrees.

In addressing this claim, the Court must limit its analysis to the record before the state court at the time it adjudicated the claim.  *Brumfield v. Cain*, 135 S. Ct. 2269, 2289 (2015) (citation omitted).  As such, the Court may not consider the police sketch and the DNA evidence discussed above, because the state appellate court did not have that evidence before it on direct appeal. Moreover, the Court must apply a "twice-deferential standard" in reviewing the state appellate court's ruling on the sufficiency of the evidence.  *Parker v. Matthews*, 567 U.S. 37, 43 (2012). First, the Court must give deference to the jury verdict, because "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."

---

[2]     In response to Boyd's original petition, Respondent argued that this claim was procedurally defaulted.  In answering the amended petition, however, Respondent did not renew that argument.

*Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).   Additionally, the Court must accord another level of deference to the state court decision as required by § 2254(d).   *Id.*

On direct review, the Illinois Appellate Court denied Boyd's sufficiency-of-the-evidence claim on the merits, stating:

> "When a court reviews the sufficiency of the evidence, it must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *People v. Phillips*, 215 Ill. 2d 554, 569–70, 294 (2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).
>
> . . .
>
> [B]oth Quiles and Zinda had the opportunity to view the assailant, whom they immediately recognized as [Boyd], the person who had been in their home only three days earlier.   Moreover, the perpetrator displayed a familiarity with the home that would be expected of a person whom Quiles had known for a year.   Upon entering the home, the offender asked Zinda about the whereabouts of her boyfriend, and he later directed his partner to a lamp that was out of view in another room. The victims explained their fearful reluctance to identify [Boyd] as the perpetrator, and the jury credited their testimony despite the evidence of their involvement with drugs.   After viewing this evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found [Boyd] guilty beyond a reasonable doubt.

*Boyd*, 845 N.E.2d at 935.

Boyd cannot demonstrate that the state court's ruling was either contrary to, or an unreasonable application of, the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979).   The state court identified and properly stated the *Jackson* standard.   In addition, the decision reasonably applied *Jackson* in concluding that Quiles's and Zinda's eyewitness identifications were sufficient evidence to support Boyd's conviction.   "It is black letter law that testimony from a single witness suffices for conviction even if 20 bishops testify that the eyewitness is a liar."  *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005); s*ee also Jones v.*

*Butler*, 778 F.3d 575, 581–82 (7th Cir. 2015) (rejecting habeas challenge to sufficiency of evidence when conviction was supported by eyewitness testimony).

In short, the state appellate court properly recognized that the case boiled down to witness credibility. Although defense counsel had attempted to impeach Quiles's and Zinda's testimony, the jury reasonably decided to credit the prosecution's version of what had transpired and convicted Boyd. The appellate court properly deferred to the jury's credibility determinations under *Jackson*, and this Court too must give due deference to them. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (stating that a federal court has no license to reexamine a jury's credibility determinations). Because the state court ruling is neither contrary to nor an unreasonable application of *Jackson*, Claim One fails on the merits.

## II.     Claim Two: Jury Instruction on Eyewitness Identification

In Claim Two, Boyd argues that the trial court erred in the eyewitness identification instruction given to the jury. The Court finds that Claim Two is procedurally defaulted.

As Respondent points out, during the state-court proceedings, the state appellate court held that this claim had been forfeited. Indeed, in his reply in support of his habeas petition, Boyd concedes that the claim is procedurally defaulted. However, he argues that he can meet both exceptions to procedural default. A petitioner may excuse his procedural default by showing either (1) "that failure to consider the claim[] will result in a fundamental miscarriage of justice," or (2) "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Boyd's petition fails on both grounds. As to the first ("actual-innocence") exception, Boyd has not identified "new, reliable evidence of his innocence" so convincing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a

reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009). Boyd points to (1) the police sketch based on Quiles's description of the suspect (which Boyd claims resembles Reeves), (2) a photograph of Reeves, and (3) evidence that Reeves's DNA was found on a cigarette butt outside of Quiles's apartment. But none of this evidence exculpates Boyd.

The police sketch was not introduced into evidence at trial because defense counsel successfully objected to its admission. *See Boyd*, 2011 WL 10453943, at *6. However, Boyd argues—as he did in the state post-conviction proceedings—that the sketch tended to show that Reeves, not Boyd, committed the crimes. *Id.* According to Boyd, Reeves and a second man named Shawn broke into Quiles and Zinda's apartment while Boyd remained outside in a car, unaware of what they were doing. In the state post-conviction proceedings, the Illinois Appellate Court rejected this argument, finding that the sketch resembled Boyd and that Boyd's defense counsel was prudent in objecting to it at trial. *Id.*

Having compared the police sketch to Boyd's inmate photo from the Illinois Department of Corrections, this Court also finds that the police sketch resembles Boyd.[3] In support of his argument that the sketch definitively shows that Reeves committed the crimes, Boyd has submitted photographs of a man he claims to be Reeves.[4] These photographs were never presented to any state court, and Boyd has failed to provide any foundation to authenticate them. Even if Boyd could lay a proper foundation as to the photographs' authenticity, however, they would not exculpate him. While the photographs of the man Boyd claims to be Reeves also resemble the police sketch, this does not demonstrate that Reeves, rather than Boyd, committed the crime. The fact that Reeves may bear some resemblance to the suspect in the police sketch does not change

---

[3] Included with Boyd's habeas petition are a copy of the police sketch, Am. Pet. at 79, ECF No. 79, and a photograph of himself, *id.* at 81.

[4] The photographs also are included with Boyd's petition. *See* Am. Pet. at 179–81.

the fact that Boyd also resembles the sketch. In sum, the police sketch and the photos do not establish that Boyd is actually innocent. To the contrary, as the state appellate court noted on post-conviction review, the police sketch supports Boyd's guilt.

Next, Boyd provides a report and state court motion regarding DNA evidence that he claims is exculpatory. This evidence concerns two DNA samples on a cigarette butt found in a parking lot outside Quiles and Zinda's apartment. Boyd's DNA was identified as one of the two sources on the cigarette butt, but the prosecution did not disclose this fact until Boyd's case was remanded for resentencing. On November 1, 2010, the DuPage County Crime Laboratory initiated a national search for DNA profiles to identify the second DNA source. The Tennessee Bureau of Investigation reported that the second DNA profile matched Reeves.

But the DNA evidence also falls short of exculpating Boyd. The only DNA evidence in the record comes from a cigarette butt found in the parking lot outside of the apartment, which contains both Boyd's and Reeves's DNA. If anything, this evidence is harmful to Boyd, because it places him at the scene of the crime. Furthermore, recall that two people broke into Quiles and Zinda's apartment—Boyd was later identified as the lead attacker, but his accomplice's identity was never discovered. A jury presented with evidence that Boyd's and Reeves's DNA were found together on the cigarette in the parking lot could reasonably conclude that Reeves was the second perpetrator. Of course, it could be argued that the DNA evidence is also consistent with Boyd's version of events. But this scenario ignores Quiles's and Zinda's testimony that, during the crime, they saw and recognized Boyd as one of the men who had helped move their furniture into their apartment three days before the crime occurred. In sum, Boyd has not adduced new evidence that would have precluded a reasonable juror from finding him guilty beyond a reasonable doubt.

That leaves the cause-and-prejudice exception, but Boyd cannot satisfy this exception, because he cannot show that the instruction given at his trial resulted in "actual prejudice," *Coleman*, 501 U.S. at 750. The Illinois pattern jury instruction for eyewitness testimony reads:

> When you weigh the identification testimony of a witness, you should consider all facts and circumstances in evidence, including, but not limited to, the following:
>
> (1)    The opportunity the witness had to view the offender at the time of the offense.
> (2)    The witness's degree of attention at the time of the offense.
> (3)    The witness's earlier description of the offender.
> (4)    The level of certainty shown by the witness when confronting the defendant.
> (5)    The length of time between the offense and the identification confrontation.

*Boyd*, 845 N.E.2d at 933 (quoting Illinois Pattern Jury Instruction, Criminal, No. 3.15).

Rather than providing the jury with the entire contents of this instruction, the trial judge gave the jury the following shortened instruction:

> When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:
>
> The opportunity the witness had to view the offender at the time of the offense.

*Id.*

An erroneous jury instruction can result in a cognizable habeas claim when the error so affects the trial that the resulting conviction violates due process. *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (citations omitted). Due process is violated only when the state-law error "produced a significant likelihood that an innocent person has been convicted." *Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001) (quoting *Howard v. O'Sullivan*, 185 F.3d 721, 724 (7th Cir. 1999)). A habeas petitioner faces an "'especially heavy' burden" to demonstrate a federal due process violation from a state jury instruction error. *Waddington*, 555 U.S. at 190 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

Here, the record does not establish a significant likelihood that an innocent person was convicted as a result of the shortened jury instruction. The jury heard extensive evidence that Quiles and Zinda had previously known Boyd. Further, Quiles and Zinda had a prolonged opportunity to see their assailant's face and hear his voice, and they emphatically identified Boyd as the attacker. Although Quiles and Zinda had been less than forthcoming in the original identifications out of concern for their safety, they immediately identified Boyd once they believed they were out of danger. The jury chose to credit Quiles's and Zinda's testimony.

Moreover, nothing in the record rebuts the state court's conclusion that the prosecution's case would have been strengthened, rather than weakened, had the jury been given the full instruction. *See Boyd*, 835 N.E.2d at 934 (finding that "the State's case likely would have been *strengthened* by drawing the jury's attention to the omitted factors" because "[t]he victims were unquestionably focused on their attacker during the prolonged encounter," "their descriptions were never inconsistent," and "only nine months elapsed between the offenses and the trial") (emphasis in original). Thus, Boyd cannot excuse his procedural default of Claim Two under either exception.

### III. Claims Three and Four: Ineffective Assistance of Trial and Appellate Counsel

In Claim Three, Boyd argues that his trial counsel: (1) failed to object to the jury instruction regarding eyewitness identification; (2) failed to present evidence of Boyd's innocence; (3) wrongfully introduced evidence regarding Boyd's gang affiliation; (4) failed to investigate Quiles's drug activities; and (5) failed to investigate and produce evidence showing that Reeves, rather than Boyd, actually committed the offense. In Claim Four, Boyd argues that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness as to the issues of the jury instruction, gang affiliation, and Quiles's drug activities.

## A.  Partial Procedural Default of Claim Three

As an initial matter, Respondent argues that Boyd's ineffective assistance of trial counsel claim is partially defaulted.   Specifically, Respondent points to Boyd's claim that his trial counsel was ineffective for failing to investigate and produce evidence that Reeves committed the offense, which was first raised when Boyd sought leave to file a successive post-conviction petition. Because the state court denied Boyd leave to file that petition, Respondent contends, that aspect of Claim Three is procedurally defaulted.

A state prisoner's habeas claim may not be entertained by a federal court when "(1) a state court has declined to address th[e] claim[] because the prisoner has failed to a meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds."   *Walker v. Martin*, 562 U.S 307, 315 (2011) (quoting *Coleman*, 501 U.S. at 729–30) (internal quotation marks omitted).   A state procedural rule is "adequate" if it is "firmly established and regularly followed."   *Walker*, 562 U.S. at 316 (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)).   And a state procedural is "independent" if the state court "actually relied on the state procedural rule as an independent basis for the disposition of the case."   *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010).

Illinois law permits a petitioner to file "[o]nly one" post-conviction petition and provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."   725 Ill. Comp. Stat. 5/122-1(f), 5/122-3.   This is an adequate and independent state ground for decision.   *See United States ex rel. Watson v. Pfister*, No. 13 C 2276, 2015 WL 1186795, at *5 (N.D. Ill. Mar. 11, 2015) (finding that § 5/111-1(f) is an adequate and independent state ground).

A petitioner who claims ineffective assistance must identify each "act[] or omission[] of counsel that [is] alleged not to have been the result of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *see also Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009). When an ineffective-assistance claim rests on multiple grounds, a petitioner must raise *each* ground in state court; failure to do so results in procedural default. *Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009) ("[I]f a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted.").

In Boyd's case, one ground for his ineffective-assistance claim—that his trial counsel failed to investigate and present forensic evidence of Reeves's involvement in the crime—was not included in his first post-conviction petition.[5] Although he raised it in his attempt to file a successive post-conviction petition, the Illinois court denied him leave to file that petition, pursuant to 725 Ill. Comp. Stat. 5/122-1(f). Thus, this aspect of Claim Three is procedurally defaulted.

### B. Procedural Default of Claim Four

Respondent also argues that Boyd's ineffective-assistance claims regarding his appellate counsel are procedurally defaulted, because they were not properly raised before all three levels of the state court. Although Boyd clearly raised some of these claims in his state post-conviction petition, Respondent points out that none of these arguments was premised on appellate counsel's failure to raise trial counsel's ineffective assistance.

---

[5] Boyd contends that the claim was raised in his initial petition, pointing to the portion of his initial petition (repeated in his amended petition) that argues that trial counsel was ineffective in that he failed to present evidence of Boyd's innocence—namely, the police sketch and the cigarette butt. The Court reads the amended petition to assert a new claim related to trial counsel's failure to *investigate* Reeve's involvement and produce *additional* evidence. To the extent the claims are truly one and the same, the claim lacks merit as explained below in Section III.C.2.

Boyd's post-conviction petition is not a model of clarity, and it is true that his state post-conviction petition does not explicitly claim that his appellate counsel was ineffective by failing to raise trial counsel's failure to address various underlying issues. But read as a whole, the Court finds that the petition states such a claim. First, the petition clearly raises an ineffective-assistance-of-trial-counsel claim as to trial counsel's failure to raise the issues relevant to the jury instruction, Boyd's gang affiliation, and Quiles's drug activities. It then proceeds to argue that appellate counsel likewise delivered ineffective assistance by neglecting to raise trial counsel's failure on these issues. Piecing the arguments together, it is clear that Boyd intended to layer his ineffective-assistance-of-appellate-counsel claim on top of his ineffective-assistance-of-trial-counsel claim. And this was understood by the state trial court that adjudicated Boyd's post-conviction petition. *See* Resp't Ex. S, Order Dismissing Post-Conviction Petition, *People v. Boyd*, No. 03 CF 890 (Ill. Cir. Ct. June 16, 2010) ("Boyd claims that appellate counsel was ineffective for not raising the issue of trial counsel's own incompetence."). Accordingly, the Court holds that Boyd sufficiently presented his ineffective-assistance-of-appellate-counsel claim to the state trial court in his post-conviction petition.

Respondent also asserts that Boyd failed to present the ineffective-assistance-of-appellate-counsel claim in his appellate briefs before the state appellate court on post-conviction review. Yet the state appellate court clearly understood that it was adjudicating both the trial and appellate counsel claims. *Boyd*, 2011 WL 10453943, at *7, 9 ("[Boyd] argues the related point that appellate counsel was ineffective for failing to allege that trial counsel was ineffective for not investigating and emphasizing Quiles' background at trial. . . . [Boyd] was not prejudiced either by trial counsel opening the door to the evidence of his gang membership or by appellate counsel failing to raise the issue on direct appeal. . . . [Boyd] argues that trial counsel was ineffective for

failing to challenge the jury instruction regarding eyewitness testimony and that appellate counsel was ineffective for failing to allege trial counsel's ineffectiveness."). The ineffectiveness-of-appellate-counsel claim thus was properly presented to the state appellate court.

Finally, Boyd also properly raised the issue in his PLA to the Illinois Supreme Court. Unlike the PLA on direct appeal, Boyd's PLA on post-conviction review included factual background and legal arguments and contained several references to the ineffective assistance of appellate counsel. Resp't Ex. X, PLA, *People v. Boyd*, No. 112689, at 4, 6, 8, 14, 21. As a *pro se* filing, it must be construed in Boyd's favor. *Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014). The Court finds that the PLA provides sufficient references to ineffective assistance of appellate counsel to raise the claim before the Illinois Supreme Court.

Because Respondent's procedural default arguments as to Claim Four lack basis, the Court proceeds to the merits of Claim Four, along with the merits of Claim Three.

### C.     Merits of Ineffective Assistance of Counsel Claims

Under the Supreme Court's decision in *Strickland*, a habeas petitioner can prevail on a claim for ineffective assistance of counsel only if he shows both that counsel's performance fell below an objective standard of reasonableness and that the petitioner suffered prejudice as a result. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 687–89, 693–94). To establish prejudice, the petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (citing *Strickland*, 466 U.S. at 694).

On post-conviction review, the state appellate court properly identified the *Strickland* standard, stating:

> [Boyd's] postconviction petition alleges that trial counsel and appellate counsel rendered ineffective assistance. . . . Under *Strickland*, defense counsel is ineffective

only if (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's error prejudiced the defendant. Failure to establish either prong defeats the claim. *Strickland*, 466 U.S. at 687. A court need not decide whether counsel's performance was deficient before analyzing whether the defendant was prejudiced. *People v. Cortes*, 181 Ill. 2d 249, 295–96 (1998).

The burden is on the defendant to affirmatively prove prejudice. *Strickland*, 466 U.S. at 693. To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The prejudice component of *Strickland* entails more than an "outcome-determinative test"; rather, the defendant must show that deficient performance of counsel rendered the result of the trial unreliable or the proceeding fundamentally unfair. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000).

*Boyd*, 2011 WL 10453943, at *5–6. And, for the reasons explained below, Boyd cannot demonstrate that the state court unreasonably applied *Strickland* as to any of the issues he has raised.

## 1. Jury Instruction

First, Boyd argues that his trial counsel was ineffective for failing to challenge the jury instruction on eyewitness testimony (and that, in turn, his appellate counsel was ineffective for failing to argue the same). In rejecting Boyd's claims for ineffective assistance as to the jury instruction, the state appellate court reasoned:

In *Boyd I* [i.e., the state court's review on direct appeal], we . . . rejected [Boyd's] argument that he was entitled to a new trial . . . on the ground that the trial court incorrectly instructed the jury regarding identification testimony. Engaging in a plain-error analysis based on [Boyd's] procedural default of the jury instruction issue at trial, we concluded that any error in the challenged jury instruction was minimal and that [Boyd] could not obtain relief under the plain-error doctrine because the evidence was not closely balanced. *Boyd I*, 363 Ill. App. 3d at 1041–42. We concluded that the State had introduced overwhelming evidence to prove [Boyd] guilty beyond a reasonable doubt of aggravated battery and aggravated battery with a firearm. *Boyd I*, 363 Ill.App.3d at 1042.

Consistent with our plain-error analysis in *Boyd I*, we conclude that [Boyd] was not prejudiced by trial counsel's failure to challenge the identification instruction. The

overwhelming proof of [Boyd's] guilt likely would have been enhanced by the use of the pattern jury instruction, drawing attention to the omitted factors. The victims were unquestionably focused on their attacker during the prolonged encounter, and thus had a good opportunity to observe him. Although the victim's earlier descriptions of the offender were vague when compared to their unequivocal identification of defendant at trial, their descriptions were never inconsistent and the vagueness was explained by their fear of another attack. Also, only nine months passed between the offenses and the trial, making it more likely that the witnesses' recollections at trial were accurate. *Boyd I*, 363 Ill. App. 3d at 1041. Under these circumstances, [Boyd] was prejudiced neither by trial counsel failing to challenge the [non–Illinois Pattern Instruction] jury instruction on identification at trial nor by appellate counsel failing to raise the issue on direct appeal.

*Id.* at *9.

Boyd cannot demonstrate that the appellate court's ruling involved an unreasonable application of *Strickland*. As the court explained, its decision on direct appeal noted that there was no harm to Boyd in the jury instruction issue. And as explained above with respect to Claim Two, there is nothing in the record to refute the state court's conclusion that Quiles and Zinda provided strong eyewitness identifications of Boyd. The additional factors from Illinois Pattern Instruction 3.15 would not have changed this reality and, as the appellate court noted, would likely have strengthened the prosecution's case. *See Boyd*, 835 N.E.2d at 934.

For these reasons, Boyd cannot demonstrate prejudice either from trial counsel's failure to object to the instruction or from appellate counsel's failure to raise the issue on direct appeal. Because there is no prejudice to Boyd, there is no *Strickland* violation.

### 2. Evidence of Innocence

Boyd's next argument is that his trial counsel was ineffective for failing to introduce evidence of the police sketch and the cigarette butts found outside Quiles and Zinda's apartment. According to Boyd, this evidence shows that he did not commit the crime, and he would have been acquitted had it been introduced.

At the outset, the Court again notes that it is limited to reviewing the record before the state court at the time that court made its decision. *See Brumfield*, 135 S. Ct. at 2289. The state court had the police sketch, but it had neither the DNA evidence from the cigarette butts nor the photographs that Boyd asserts are of Reeves. As such, the Court cannot consider this evidence. With this understanding, the Court turns to the state appellate court's ruling on Boyd's claim.

The state appellate court rejected Boyd's argument that his trial counsel was ineffective by failing to present sufficient evidence of Boyd's innocence.

> First, [Boyd] contends that the jury should have seen the composite sketch of the offender. [Boyd] believes the sketch resembles Sam Reeves, whom [Boyd] alleges committed the offense. . . . In support of his claim, [Boyd] cites "confidential information" that he allegedly told defense counsel before trial, including "that [Boyd] had gone to the scene with two others, one of whom was Sam Reeves; that the two others had gone inside Quiles' apartment; that [Boyd] believed they had gone in only to purchase drugs; that Boyd remained in the car and had no knowledge of and did not participate in what the other two did inside the home."

> The State argues that [ ] trial counsel's failure to ask for the sketch to be given to the jury is a strategic trial decision. Counsel's decisions on what evidence to present and what witnesses to call are routinely considered matters of trial strategy. *People v. Munson*, 206 Ill. 2d 104, 139 (2002). Such decisions are generally cloaked with immunity from claims of ineffective assistance of counsel. *People v. West*, 187 Ill. 2d 418, 432 (1999). Further, counsel's strategic decisions will not be second-guessed, "the fact that another attorney might have pursued a different strategy is not a factor in the competency determination." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994) (citing *People v. Hillenbrand*, 121 Ill. 2d 537, 548–49 (1988)). Trial counsel's decision to not show the sketch to the jury did not fall below an objective standard of reasonableness.

> Moreover, as the postconviction court noted, the sketch was rejected at trial because defense counsel successfully objected to its admission. The State had attempted to introduce the sketch because it resembles [Boyd's] photograph and would be further proof that defendant was the offender. The State's determination that the sketch would strengthen the prosecution reinforces our conclusion that defense counsel's decision to object to it was prudent and did not prejudice [Boyd].

*Boyd*, 2011 WL 10453943, at *6.

This is not an unreasonable application of *Strickland*. When evaluating counsel's performance, a court must consider whether counsel met the prevailing professional norms considering all of the circumstances of the representation. *Hinton v. Alabama*, 571 U.S. 263, 273 (2014) (citing *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). "'A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Campbell v. Reardon*, 780 F.3d 752, 762–63 (7th Cir. 2015) (quoting *Strickland*, 466 U.S. at 689).

Here, given the sketch's resemblance to Boyd, it was reasonable for trial counsel to object to the prosecution's efforts to introduce the sketch into evidence. Boyd's case came down to the credibility of Quiles and Zinda. One way in which defense counsel attempted to attack their credibility at trial was by noting that they originally did not identify Boyd when first being interviewed by the police. Quiles and Zinda responded that they were initially afraid of gang retaliation, and they came forward to identify Boyd only once they believed they were safe.

Further, Quiles testified that he attempted to describe Boyd's appearance when giving the police sketch. Introducing the sketch into evidence thus would have bolstered Quiles's credibility, because the jury would have been able to see Boyd's image in the sketch and the corresponding description that Quiles gave to the police. Introducing the sketch also would have allowed the prosecution to argue that Quiles had been consistent in his description of Boyd at all times (even though he was afraid to identify him). Accordingly, Boyd cannot demonstrate deficient performance by his trial counsel with regard to this issue.

Additionally, as the state appellate court noted, Boyd cannot show undue prejudice. Boyd argues that Reeves committed the crime with a third man, Shawn, and that Boyd was in Reeves's

car when the crime occurred. The evidence before the state appellate court considering the *Strickland* claim does not support this position. The police sketch implicates Boyd. All told, Boyd's only evidence is his own word that he did not commit the crime. The jury, however, chose to believe Quiles and Zinda. Boyd cannot show a *Strickland* violation, and he cannot meet the demanding requirements of AEDPA.

Furthermore, as previously discussed, the DNA evidence, which was not part of the record before the state court, does nothing to exculpate Boyd. The only DNA evidence that Boyd currently presents is from the cigarette containing both Boyd's and Reeves's DNA. This evidence puts Boyd at the scene of the crime, and he has offered nothing to corroborate his story that he was in the car while Reeves committed the crime without him.

In sum, the evidence that Boyd claims helps him—the police sketch, Reeves's picture, and the DNA evidence—is actually harmful to Boyd. Boyd's counsel was not ineffective for failing to present this evidence and pursue Boyd's proposed line of defense. *See Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001) (stating that defense counsel is not required to present losing arguments).

### 3. Evidence of Boyd's Gang Affiliation

Boyd next argues that his trial counsel was ineffective for opening the door to evidence of his gang affiliation, and that his appellate counsel was ineffective for failing to raise trial counsel's performance on appeal. The state appellate court rejected these arguments:

> The trial court, while finding that trial counsel's examination of Quiles had opened the door to the challenged evidence, instructed the jury to consider [Boyd's] alleged gang membership only for the purpose of identification. The evidence of [Boyd's] gang membership was relevant to determining the identity of the offender because it explained the victims' delay in identifying [Boyd]. The victims explained that they were reluctant to identify [Boyd] for fear of gang retaliation, and thus waited until Quiles left the hospital. Identification was the central issue in the case, and trial counsel's decision to emphasize the victims' delay in identifying [Boyd], and

thus open the door to evidence of [Boyd's] gang membership, was a matter of strategy that did not fall below an objective standard of reasonableness.

Moreover, we agree with the postconviction court that the evidence of [Boyd's] gang membership was superfluous in light of the overwhelming evidence that defendant was the offender. Both Quiles and Zinda had the opportunity to view the assailant, whom they immediately recognized as [Boyd], the person who had been in their home only three days earlier. The offender showed a familiarity with the home that would be expected of a person whom Quiles had known for a year. Upon entering the home, the offender asked Zinda about the whereabouts of her boyfriend, and he later directed his partner to a lamp that was out of view in another room. *Boyd I*, 363 Ill. App. 3d at 1042–43. [Boyd] was not prejudiced either by trial counsel opening the door to the evidence of his gang membership or by appellate counsel failing to raise the issue on direct appeal.

*Boyd*, 2011 WL 10453943, at *8–9.

The appellate court's reasoning was not contrary to or an unreasonable application of *Strickland*. As the court explained, defense counsel acted reasonably by putting Quiles's and Zinda's eyewitness identifications and credibility at the center of the case. Moreover, Illinois law allows the introduction of gang-related evidence for the limited purpose of showing the circumstances of an identification. *Illinois v. Weston*, 956 N.E.2d 498, 504 (Ill. App. Ct. 2011) (citing *Illinois v. Gonzalez*, 568 N.E.2d 864, 866 (Ill. 1991)). When the reliability of an identification is a "central issue," introduction of gang-related evidence is permitted. *Weston*, 956 N.E.2d at 505 (citing *Gonzalez*, 568 N.E.2d at 505). Defense counsel properly recognized that he had to attack Quiles's and Zinda's credibility and he took various approaches in doing so, including by attempting to impeach them with prior inconsistent statements and with evidence of Quiles's drug activities. As a result, although it barred the gang evidence initially, the trial court allowed the prosecution to introduce the gang-affiliation evidence, because the prosecution had a right to rehabilitate Quiles and Zinda's credibility once it had been attacked.

The Court also notes that there is nothing in the record to suggest that the jury convicted Boyd based on improper use of any gang evidence. There is no evidence of a guilty verdict based

on gang affiliation or the jury's unchecked emotion. *See United States v. Santiago*, 643 F.3d 1007, 1011 (7th Cir. 2011). Additionally, as the state court noted, any issue regarding the introduction of gang-related evidence does not offset the independent evidence of Boyd's guilt. Thus, Boyd cannot demonstrate a *Strickland* violation based on his trial counsel's performance. In turn, his appellate counsel was not ineffective for failing to raise trial counsel's performance on this issue on appeal.

### 4. Quiles's Drug Activities

Finally, Boyd argues that his trial counsel was ineffective for failing to investigate Quiles's drug activities, and that his appellate counsel was ineffective for failing to raise this failure on appeal.

The appellate court noted that the prosecutor had disclosed evidence of Quiles's drug dealing to the defense attorney prior to trial. *Boyd*, 2011 WL 10453943, at *7. Indeed, defense counsel used this evidence at trial. The jury heard that Quiles (1) was recorded selling drugs; (2) agreed to be a police informant; (3) claimed that his testimony was voluntarily and there were no threats or promises for his testimony; (4) sold approximately one ounce of cocaine per week in the prior year; and (5) denied using drugs, even though drugs were found in his system when he was treated at the hospital. Defense counsel repeatedly stated in closing arguments that Quiles was a "selfish" drug dealer who was not credible, and that Quiles had been using Zinda as a "pawn" to falsely accuse Boyd. *Id*. at *8. In light of this record, the appellate court rejected Boyd's *Strickland* claim, concluding that he had not demonstrated prejudice. *Id*.

Defense counsel has a "'duty to make a reasonable investigation or to make a reasonable decision that makes particular investigation unnecessary.'" *Thomas v. Clements*, 789 F.3d 760, 768–69 (7th Cir. 2015) (quoting *Strickland*, 466 U.S. at 691). Clearly, Boyd's trial counsel was

aware of Quiles's drug dealing, as counsel used that evidence extensively at trial in attempting to impeach Quiles. That said, there is no evidence that trial counsel performed any investigation beyond simply taking the information tendered to him by the prosecution. When "assessing the reasonableness of an attorney's investigation[ ], a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). It would have been reasonable for a defense attorney to further investigate the drug issue based on the evidence tendered by the prosecution. Quiles was a central figure in the case, and further investigation of his criminal history may have revealed other evidence for impeachment.

Nevertheless, the state court's conclusion that Boyd cannot demonstrate prejudice under *Strickland* is not an unreasonable application of that standard. A *Strickland* claim for failure to investigate requires a "specific, affirmative showing" of what the investigation would have discovered. *Thompkins*, 698 F.3d at 987. This is consistent with *Strickland*'s requirement that Boyd has the burden of showing prejudice. *See Wong v. Belmontes*, 558 U.S. 15, 28 (2009) (per curiam) (citing *Strickland*, 466 U.S. at 469) ("*Strickland* places the burden on the defendant, not the State, to show a "reasonable probability" that the result would have been different."). Here, Boyd fails to meet this burden. He makes no showing there is a reasonable probability that the result would have been different in his case if his trial counsel had conducted a more in-depth investigation into Quiles's drug activities. Furthermore, Quiles's drug activities were extensively discussed during the trial. The fact that Quiles was a drug dealer was clearly before the jury, yet the jury decided to credit Quiles's testimony and convict Boyd.

Because Boyd cannot demonstrate prejudice, his *Strickland* claim fails.   His trial counsel's performance did not violate *Strickland*, and his appellate counsel was not ineffective for failing to raise the issue on appeal.   Claims Three and Four thus provide no basis for habeas relief.

## IV.   Claim Five: *Brady* Violation

In his amended petition, Boyd argues—for the first time—that he suffered a *Brady* violation.   He claims that in 2003, prior to his trial, the prosecution obtained a report showing that two male DNA profiles had been extracted from a cigarette butt found outside Quiles and Zinda's apartment, and that the prosecution failed to disclose this information.   He argues that the report was material evidence, and that if it had been disclosed to him, his attorney could have filed a motion to compel Reeves to submit a DNA sample, which would have shown that the second DNA profile matched Reeves.   Respondent argues that this claim is time-barred, procedurally defaulted, and substantively meritless.

### A.   Timeliness of Claim Five

First, Respondent argues that the *Brady* claim is time-barred and cannot relate back to the original habeas petition, because it does not rest on the same "core of operative facts" as any of the claims in that petition.   Resp't Br. at 29, ECF No. 99 (quoting *Mayle v. Felix*, 545 U.S. 644, 664 (2005)).   Indeed, "[a]n amended habeas petition does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading."   *Mayle*, 545 U.S. at 645.   *See also* 3 J. Moore, et al., Moore's Federal Practice § 15.19[2], p. 15–82 (3d ed. 2004) (stating that relation back is ordinarily allowed "when the new claim is based on the same facts as the original pleading and only changes the legal theory").   Although Boyd's original petition does contain numerous references to forensic testing and DNA evidence, the petition does not assert a claim based on nondisclosure of a DNA report—

nor could it, because Boyd was not aware of the DNA report at the time he filed his original petition. Thus, the Court agrees that the relation back doctrine does not apply.

That being the case, the *Brady* claim must be timely in its own right. AEDPA provides a one-year statute of limitations for a prisoner's habeas petition. *See* 28 U.S.C. § 2254(d)(1). Respondent contends that the "latest possible starting date" for AEDPA's statute of limitations is April 11, 2014—the point at which Boyd's counsel became aware of the DNA report *and* Boyd's trial counsel's claim that the report had not been previously disclosed. Resp't Br. at 30; *see* Am. Pet. at 185, ECF No. 79 (letter dated April 11, 2014). The Court agrees. With that date in mind, a petition including Boyd's *Brady* claim should have been submitted by April 11, 2015. The amended petition, however, was not filed until May 4, 2018. Boyd has provided no satisfactory explanation for a three-year delay in filing an amended petition including his *Brady* claim. Instead, he merely states that he can "establish a viable claim of actual innocence sufficient to relax any time bar." *See* Reply Br. at 18, ECF No. 106. As discussed below in Section IV.B, however, the evidence Boyd identifies is not indicative of actual innocence. As such, the Court concludes that Boyd's *Brady* claim is untimely.

Of course, the applicable limitations period is tolled for the time during which a "properly filed application for State post-conviction or other collateral review" is pending. *See* 28 U.S.C. § 2254(d)(2). Although Boyd sought leave to file a successive post-conviction petition—raising the *Brady* claim—in August 2014, he was denied leave to file that petition. As such, the petition was not "properly filed." *See Martinez v. Jones*, 556 F.3d 637, 638–39 (7th Cir. 2009) (noting that a successive petition "tolls the limitations period only if the state court grants permission to file it"). Further, Boyd's original petition, which had been pending since 2012, did not toll the statute of limitations. *See Duncan v. Walker*, 533 U.S. 167, 181 (2006) ("[Section] 2254(d)(2)

does not toll the limitation period during the pendency of a federal habeas petition."). Thus, because Boyd filed his amended petition three years after the limitations period expired, the *Brady* claim is time-barred.

### B.      Procedural Default of Claim Five

Even assuming, however, that Claim Five were timely, it is procedurally defaulted. The state trial court denied Boyd leave to file the successive petition in which he first raised this claim, and the appellate court affirmed that decision. As discussed in Section III.A, the state court's decision denying Boyd leave to file a successive petition renders the claims therein procedurally defaulted. Thus, Boyd may only proceed on Claim Five if he can satisfy one of the exceptions to procedural default. The state court opinion denying his motion for leave makes clear that he cannot.

As to the actual-innocence exception, the evidence Boyd identifies as the subject of the claimed *Brady* violation—the 2003 DNA report—does not constitute new, reliable evidence of innocence so convincing that no reasonable juror would have voted to convict. As the Illinois court explained, "[e]vidence that there were two [then] unnamed/unknown DNA contributors on the burning cigarette butt found in the parking lot is not exculpatory." Resp't Ex. GG, Order denying leave to file successive petition, *People v. Boyd*, No. 03 CF 890 (Ill. Cir. Ct. Apr. 10, 2015), at 11. The report is "too remote and speculative to conclude that an alternative suspect actually committed the offense," and "does not impeach the victims' testimony." *Id.* The Court agrees with the state court's conclusion. Evidence that a cigarette butt containing two DNA profiles from unknown individuals was found near the crime scene is not evidence of Boyd's innocence, and would not have changed the result at trial. For similar reasons, Boyd cannot satisfy the cause-and-prejudice exception. As the Illinois court concluded, no *Brady* violation

30

resulted from the nondisclosure, because the DNA report is neither exculpatory nor impeaching. Because neither exception is satisfied, the Court concludes that Claim Five is procedurally defaulted.

## V.     Boyd's Requests for Discovery and a Stay in the Proceedings

While this case was pending, Boyd filed a motion for discovery in this Court.   *See* Mot. for Discovery at 24, ECF No. 13.[6]   Boyd sought discovery on three topics: (1) Sam Reeves's driver's license photograph; (2) DNA testing of the additional cigarette butts found outside Quiles and Zinda's apartment; and (3) police reports and related law enforcement evidence regarding Quiles's drug activities.   *Id*. at 24–31.   Boyd later filed an additional motion to "supplement the initial motion for discovery," 2d. Mot. for Discovery at 1, ECF No. 77, in which he also requested the appointment of counsel, *id.* at 12.   In his second motion for discovery, Boyd seeks discovery on the following topics: (1) Sam Reeves's driver's license photograph; (2) additional forensic testing, including DNA testing and comparison of the DNA profiles extracted from the cigarette butt, further testing of a hair fragment found at the crime scene, and testing of latent fingerprints that were not protected for potential DNA evidence; (3) ballistic testing on two shell casings recovered from the crime scene; (4) fingerprint testing on prints found at the crime scene; and (5) Quiles's drug activity and role as an informant.   Boyd also seeks to have forensic evidence entered into the Combined DNA Index System (CODIS) and have an independent laboratory conduct all forensic testing.

There is no general right to discovery in a habeas corpus case.   Instead, a habeas petitioner is entitled to seek discovery only if he shows that: (1) the requested discovery demonstrates a constitutional violation at issue in the habeas corpus petition; and (2) there is good cause to obtain

---

[6]     The motion was included with a letter related to an unrelated matter.   As such, it was not docketed as a pending motion by the Clerk of Court.

the discovery. *Bracy v. Gamley*, 520 U.S. 899, 904 (1997); *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004); Rule 6(a) of the Rules Governing 28 U.S.C. § 2254 Cases. Furthermore, under AEDPA, a federal court is limited in hearing new evidence because its review is of the state court decision based on the record that was before the state court. *Cullen*, 563 U.S. 170, 184–85.

"Good cause [for discovery in a habeas case] cannot exist where the facts alleged do not provide a basis for relief." *Hubanks*, 392 F.3d at 933. Here, for the reasons stated above, Boyd's amended petition does not present any colorable claim for relief, and there is no basis to conclude that any of the discovery he seeks would change that conclusion. That being the case, the motion for discovery is denied.

## Conclusion

The petition for a writ of habeas corpus [79] is denied. The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2254 Proceedings for the United States District Courts, because Boyd has not made a "substantial showing of the denial of a constitutional right" such that reasonable jurists could debate this Court's resolution of the case. 28 U.S.C. § 2253(c)(2); *Narvaez v. United States*, 674 F.3d 621, 626 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)). The Clerk is instructed to update the docket to reflect that the Respondent is Cameron Watson, Warden, Western Illinois Correctional Center, and alter the case caption to *Boyd v. Watson*. Boyd's motion for discovery [77] is denied.

**IT IS SO ORDERED.**                    **ENTERED: 2/11/19**

_____
**John Z. Lee**
**United States District Judge**